UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| DERECK M. B., : | |
|     Plaintiff, : | |
| : | |
| v. : | C.A. No. 17-372JJM |
| : | |
| NANCY A. BERRYHILL, ACTING : | |
| COMMISSIONER OF SOCIAL SECURITY, : | |
|     Defendant. : | |

## REPORT AND RECOMMENDATION

PATRICIA A. SULLIVAN, United States Magistrate Judge.

This case is before the Court on Plaintiff's motion to reverse the Commissioner's decision, in which he argues that the Administrative Law Judge ("ALJ") erred in failing to find that Plaintiff meets the impairment listings for 12.02, 12.04 and/or 12.06 and in finding that Plaintiff retained the residual functional capacity ("RFC")[1] to engage in substantial gainful activity. Defendant Nancy A. Berryhill ("Defendant") has filed a motion for an order affirming the Commissioner's decision.

The matter has been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having reviewed the record, and having considered a second round of briefing regarding the sit/stand option, I find that the ALJ's findings are sufficiently supported by substantial evidence and that her potential error in rejecting the treating orthopedist's opinion that Plaintiff is limited to jobs that permit him to sit or stand at will has been waived and, in any event, is harmless. Accordingly, I recommend that Plaintiff's Motion to Reverse the Defendant's Final Decision without a Remand for Rehearing or

---

[1] Residual functional capacity is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

in the Alternative Reverse with a Remand for Rehearing (ECF No. 18) be DENIED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 20) be GRANTED.

I.  **Background**

Plaintiff Dereck M. B. suffered a terrible workplace accident in October 2011 when a truck on a lift under which he was working fell and crushed him. The resulting "crush injury" caused rib fractures, lumbar and thoracic spinal fractures and bilateral iliac fractures, which were initially treated during a week-long hospitalization following which Plaintiff continued out-patient treatment and physical therapy.

Because the incident entitled Plaintiff to worker's compensation, his file reflects both treatment and evaluation associated with that claim. As pertinent here, Plaintiff underwent an independent medical examination performed by orthopedist Dr. Steven Blazar who opined on December 13, 2012, that Plaintiff was partially disabled for worker's compensation purposes in that he could perform modified light duty work, with "alternating sitting and standing to his comfort level." Tr. 569-72. Also pertinent are Plaintiff's encounters with the treating orthopedist, Dr. Randall Updegrove, in 2012 and 2013; Dr. Updegrove opined that Plaintiff was capable of light work that would "allow him to sit and stand as tolerated." Tr. 364. In addition to physical treatment, Plaintiff also saw a neuropsychologist, Dr. Francis Sparadeo, once in 2012 and once in 2013. Tr. 347, 365. Based on an extensive clinical evaluation, Dr. Sparadeo ruled out cognitive impairment, but diagnosed depression and post-traumatic stress disorder; he advised that Plaintiff's goal should be "gradual return to work." Tr. 347, 353, 365. Dr. Sparadeo suggested medication for Plaintiff's mental health impairments, but Plaintiff refused. Tr. 366.

On October 23, 2012, Plaintiff applied for Disability Insurance Benefits ("DIB") under 42 U.S.C. § 405(g) of the Social Security Act (the "Act"). The Social Security Administration ("SSA") expert physicians examined the file, considered Dr. Updegrove's treating opinion together with the balance of the treating record as of the date of the review, and found Plaintiff capable of light work. Tr. 112-13, 126-27. Two SSA expert psychologists also examined the file and found that depression and anxiety were both severe at Step Two, but that Plaintiff could perform work involving simple to moderately detailed instructions with only occasional direct dealing with the general public. Tr. 110, 113-15, 124-25, 128-29.

From a physical perspective, the non-examining sources (the SSA expert physicians), the examining source (Dr. Blazar), and the treating source (Dr. Updegrove) are all consistent – that Plaintiff is capable of light work, with limitations. There is no opinion evidence from any treating or examining source establishing a more restrictive physical RFC. Although he did not provide an RFC opinion, the testimony (presented at the first hearing) of the medical expert, Dr. Stephen Kaplan, is not inconsistent in that he opined based on a file review that Plaintiff's accident did not result in "a lot of displacement" and that such soft tissue damage as he experienced "should . . . be resolved." Tr. 96. The Commissioner correctly points out that Plaintiff's counsel did not ask Dr. Kaplan any questions, including that he asked no questions to develop the record regarding the potential for a limitation based on the need for a sit/stand option.

From a mental health perspective, beyond the two evaluative appointments with Dr. Sparadeo, the medical record reflects very little mental health treatment for Plaintiff's diagnosed impairments of depression and PTSD. Nevertheless, shortly before the first hearing, Plaintiff submitted a "Psychiatric Review Technique" ("PRT") and an RFC opinion from a non-

3

acceptable medical source, licensed mental health clinician, Sallie D'Agostino Pisaturo. Tr. 454, 468. As a treating source, Ms. Pisaturo appears only once in the medical record as the author of a "Psychological Report" dated October 4, 2013; she did not submit any treating records. Tr. 449-50. In this report, she asserts that she had been seeing Plaintiff for "weekly psychotherapy sessions" for approximately two months. Contrary to Dr. Sparadeo, who performed clinical testing and found no cognitive impairments, Ms. Pisaturo's letter and opinions conclude that the accident has "significantly interfered with his cognitive ability . . . [and h]is memory and organizational ability appear to be significantly hampered." Tr. 449; see Tr. 455 (checking boxes for organic mental disorders). Ms. Pisaturo's submissions in support of Plaintiff's application also include her conclusion that he has had at least three episodes of "decompensation . . . of extended duration" and that his symptoms are so severe that he meets the Listing criteria for 12.02 (organic mental disorders), 12.04 (affective disorders), and 12.06 (anxiety-related disorders). Tr. 454, 464. No episodes of decompensation appear in the medical record.

Plaintiff testified at the first hearing on February 26, 2014, along with Dr. Kaplan, the medical expert, and a vocational expert ("VE"). During the hearing, the first ALJ asked the VE for jobs at the light and sedentary levels and also asked how that job base would be eroded if the job was "set up so that an individual can sit and stand while performing" it; the first VE responded with specific jobs, and opined that the sedentary unskilled jobs identified would be eroded by a specified percentage for the sit/stand option. Tr. 98-100. In his decision, the first ALJ rejected the Pisaturo opinion because it came from a non-acceptable source whose box-check opinions lacked the support of any objective findings. Tr. 143. Relying on Dr. Kaplan and the SSA non-examining sources, he found that Plaintiff retained the RFC to perform light

4

work, with postural limitations and the mental capacity only for simple tasks with occasional social interaction. Tr. 140. However, Dr. Updegrove's opinion was not evaluated (nor was the Blazar opinion) and, without explanation, no sit/stand option was included in the RFC. Id.

On June 19, 2015, the Appeals Council vacated the first ALJ's decision and remanded the matter because the first ALJ improperly relied on Dr. Kaplan's testimony yet Dr. Kaplan did not testify about RFC limitations; because the first ALJ omitted Plaintiff's mental limitations from the hypothetical propounded to the VE; and because the first ALJ did not evaluate either the Updegrove opinion or the Blazar opinion. Tr. 151-55. Indeed, although Dr. Blazar's opinion was mentioned in the record, a copy of it was not in the file as of the date of the first ALJ's decision.

On remand, a new ALJ was assigned to the case, the Blazar opinion was procured, and a second hearing was convened. Plaintiff and a second VE testified. This time the ALJ included mental health limitations as reflected in the opinions of the SSA expert psychologists in the hypothetical propounded to the VE. Tr. 67-69. In response, the VE testified to the availability of essentially the same unskilled jobs at the light and sedentary exertional levels as were identified by the first VE, with a reduction in numbers because of the mental health limitations. Compare Tr. 98-100, with Tr. 67-69. However, the second ALJ did not add to the hypothetical the sit/stand option on which the first ALJ had asked the first VE to opine.

In her decision, the ALJ discussed at length the opinions of Drs. Blazar and Updegrove, as directed by the Appeals Council. Tr. 16-17, 20. She found Plaintiff capable of light work with additional limitations, such as the ability to lift only ten pounds, to perform only simple tasks and to have only occasional contact with the public. Tr. 16. She afforded significant weight to the Updegrove/Blazar opinions, except for the sit/stand option. Tr. 22-23. As to that,

5

she afforded minimal weight to the limitation that Plaintiff should work at a job where he is able to sit/stand to his comfort level because "it is not specifically defined and does not set forth the maximum the claimant can do as required by a residual functional capacity assessment." Tr. 23. The second ALJ also afforded little weight to the Pisaturo opinions because they are conclusory and there are no treating notes to support them, as well as because of their inconsistency with the record as a whole. Id. Ultimately, the ALJ found Plaintiff able to perform three unskilled sedentary positions (assembler, hand packager and production inspector) that exist in sufficient numbers in the national economy; therefore, she held that he was not disabled at any relevant period. Tr. 24-25.

By the time of the second hearing, Plaintiff had stopped seeing Dr. Sparadeo and was being seen only by an internist, Dr. Charlene Ellsworth, who prescribed Vicodin and Adderall. Tr. 49-51. Plaintiff told Dr. Ellsworth he was doing volunteer work and complained of anxiety and lack of focus and determination, for which she prescribed Adderall and Wellbutrin as a trial, but her mental status examination was entirely normal. Tr. 558-60.

## II. Procedural History

Plaintiff's original motion principally challenged the ALJ's rejection of the Pisaturo finding that Plaintiff met or equaled three mental health listings. He also argued that the ALJ's RFC finding did not rely on Plaintiff's testimony about the severity of his symptoms, as confirmed by Plaintiff's continuing receipt of worker's compensation benefits; that the ALJ did not take into account the first VE's testimony; that the ALJ did not comply with the Appeals Council remand order; and that the ALJ's RFC strains credulity because the ALJ found Plaintiff capable of light work but unable to perform prior work as a short-order cook, a job that requires the ability to function at the light exertional level. The Court's analysis of these arguments in the

context of the record resulted in the tentative conclusion, now solidified into a recommendation, that none is well founded for the reasons discussed *infra*. However, in a phone conference with the parties, the Court raised an additional issue based on a *sua sponte* concern regarding the viability of the ALJ's "good reason" for rejecting the Updegrove treating opinion, confirmed by the Blazar examining opinion, that Plaintiff's ability to work is limited by his need for a sit/stand option "to his comfort level."

The Court's concern may be briefly summarized. Both the treating source, Dr. Updegrove, and the examining source, Dr. Blazar, opined that Plaintiff was limited to light work that allowed him to sit or stand at will. Such an option is addressed in SSR 96-9p, 1996 WL 374185 (July 2, 1996), which provides that an individual may need to "alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically," eroding the range of available unskilled sedentary work, with the extent of the erosion depending on facts in the record with respect to the frequency of the need to alternate sitting and standing and the length of time needed to stand. Id. at *7. The first ALJ asked the first VE about an at-will sit/stand option as applied to the facts in the record of this case, and the first VE found the framing of the limitation sufficiently specific to be able to testify to specific erosion percentages. Tr. 99-100. This testimony raises a serious question regarding the viability of the second ALJ's only reason for rejecting the Updegrove/Blazar sit/stand option opinion – that the limitation lacked specific definition to inform the RFC decision. And assuming that this reason for rejecting this aspect of the Updegrove/Blazar opinions is error, the Court was also concerned that Plaintiff waived the issue by not raising it, either before the ALJ or in this Court, as well as that such an error may well be harmless in that the erosion percentage identified by the first VE can be applied to the jobs identified by the second VE to conclude that work is available.

With these concerns looming and reluctant to make a recommendation without getting the parties' input, the Court asked them for further briefing. The matter is now ripe for decision.

## III. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999). Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); see also Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981). The determination of substantiality is based upon an evaluation of the record as a whole. Brown, 71 F. Supp. 2d at 30; see also Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). Thus, the Court's role in reviewing the Commissioner's decision is limited. Brown, 71 F. Supp. 2d at 30. The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner. Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)). "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31 (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)).

## IV. Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 416(I); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

### A. The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. § 404.1520. First, if a claimant is working at a substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(e)-(f). Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted. 20 C.F.R. § 404.1520(g). Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five step process applies to both DIB and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). The claimant must prove the existence of a disability on or before the last day of insured status for the purposes of disability benefits. Deblois v. Sec'y of Health & Human Servs., 686 F.2d 76, 79 (1st Cir. 1982); 42 U.S.C. §§ 416(i)(3), 423(a), 423(c). If a claimant becomes disabled after loss of insured status, the claim for disability benefits must be denied despite disability. Cruz Rivera v. Sec'y of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

### B. Treating Physicians and Other Sources

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there are "good reasons" to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(c). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.[2] Konuch v. Astrue, No. 11-193L, 2012 WL 5032667, at *4-5 (D.R.I. Sept. 13, 2012); 20 C.F.R. § 404.1527(c)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is

---

[2] The Social Security Administration ("SSA") has issued new regulations regarding the evaluation of opinion evidence for all applications filed on or after March 27, 2017. See 20 C.F.R. § 404.1520c. Under the new regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). This new regulation does not apply to this case.

10

unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275-76 (1st Cir. 1988). The ALJ's decision must articulate the weight given, providing "good reasons" for the determination. See Sargent v. Astrue, No. CA 11–220 ML, 2012 WL 5413132, at *7-8, 11-12 (D.R.I. Sept. 20, 2012) (where ALJ failed to point to evidence to support weight accorded treating source opinion, court will not speculate and try to glean from the record; remand so that ALJ can explicitly set forth findings).

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(c). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity ("RFC"), see 20 C.F.R. § 404.1545-46, or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(d); see also Dudley v. Sec'y of Health & Human Servs., 816 F.2d 792, 794 (1st Cir. 1987) (per curiam).

A treating source who is not a licensed physician or psychologist is not an "acceptable medical source." 20 C.F.R. §§ 404.1513, 416.913; SSR 06-03p, 2006 WL 2263437, at *2 (Aug. 9, 2006). Only an acceptable medical source may provide a medical opinion entitled to controlling weight to establish the existence of a medically determinable impairment. SSR 06-03p, 2006 WL 2263437, at *2. An "other source," such as a nurse practitioner or licensed clinical social worker, is not an "acceptable medical source," and cannot establish the existence

of a medically determinable impairment, though such a source may provide insight into the severity of an impairment, including its impact on the individual's ability to function. SSR 06-03p, 2006 WL 2263437, at *2-3. In general, an opinion from an "other source" is not entitled to the same deference as an opinion from a treating physician or psychologist. Id. at *5.

V. **Analysis**

A. **Plaintiff's RFC and Listing Arguments**

Plaintiff's blunderbuss challenge to the ALJ's RFC seems to be aimed at the proposition that it was error to reject Plaintiff's hearing testimony and other statements regarding the effects of his physical and mental impairments on his ability to work. While it is true that Plaintiff, inconsistently with his treating and examining physicians and treating psychologist, claims that he is unable to perform any work over an eight-hour workday, the argument founders in light of the ALJ's unchallenged finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 19. Plaintiff has not pointed to any flaws in the ALJ's detailed analysis leading to her well-founded negative "credibility" finding. See Howcroft v. Colvin, C.A. No. 15-201S, 2016 WL 3063858, at *12 (D.R.I. Apr. 29, 2016) ("[B]y not challenging it, Plaintiff has waived any objection to the ALJ's finding regarding the weight to give to the opinions of Dr. DeSantis and Nurse Hickey."). Also unavailing is Plaintiff's argument that the ALJ erred in resolving the arguable internal inconsistency between the SSA psychologists' "markedly limited" notation for the ability to interact with the public and their textual narrative explaining the specific occupational limitation – "Ct is able to deal directly with the public on an occasional basis." Tr. 129; see Tr. 22 n.3. To make such judgments is well within the ALJ's purview. Taylor v. Colvin, Civil Action No. 15-30183-KAR, 2016 WL 6778214, at *5 (D.

Mass. Nov. 15, 2016) ("[T]he resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [the Commissioner], not for the doctors or the courts."); Brown, 71 F. Supp. 2d at 31 (citing Richardson, 402 U.S. at 399) (same).

Plaintiff's only potentially viable shot at the RFC is the ALJ's inclusion of a ten-pound lifting limit in the RFC, without including that limit in the second VE's hypothetical, and despite the first VE's testimony that a ten-pound lifting limit would preclude light (but not sedentary) work. I find that any such error is harmless because all of the jobs opined to by the second VE, on which the ALJ relied, are at the sedentary exertional level, where lifting is limited to ten pounds. Beaudet v. Colvin, No. CA 14-112 S, 2015 WL 5510915, at *11 (D.R.I. Sept. 16, 2015) ("If the likely outcome on remand is clear and the same as that reached by the ALJ, the error is harmless and the court may uphold the denial of benefits.") (citing Ward v. Apfel, No. 98-168-B, 1999 WL 1995199, at *3 (D. Me. June 2, 1999)).

Plaintiff also argues that the ALJ did not conform to the Appeals Council's remand. This argument should be rejected not only because it appears to the Court to have no foundation, but also because the Appeals Council itself was asked to and did review the ALJ's decision. Torres Montero v. Sec'y of Health & Human Servs., 959 F.2d 230, 1992 WL 63331, at *1 (1st Cir. 1992) (unpublished table decision) (per curiam) ("Claimant's complaints about the ALJ's alleged failure to comply with the Appeals Council's remand order are particularly unpersuasive in light of the fact that the Appeals Council denied the claimant's request for review of the new decision.").

Nor should the Court linger over Plaintiff's argument that the credibility of the ALJ's finding that Plaintiff is not capable of prior work yet can do light work with additional limitations is undermined by his prior work as a cook. The VE specifically testified that

Plaintiff's prior work as a short-order cook was "semiskilled" and "light by the DOT, but medium as performed;" the VE also specifically opined that it (along with other prior work) would be ruled out by the physical and mental limitations in the ALJ's hypothetical. Tr. 63-64, 67. Therefore, the ALJ's finding that Plaintiff could not perform prior work and her finding that Plaintiff retains the RFC to perform light work with additional physical and mental limitations do not clash. Put differently, there is no inconsistency that might call into issue the ALJ's decisional approach.

Finally, Plaintiff's Listing argument does not justify remand. For starters, it is his burden to prove the existence of an impairment that meets or equals any Listing. Dudley, 816 F.2d at 793 ("The burden to demonstrate the existence of such an impairment rests with the claimant.") (citing Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982); Pelletier v. Sec'y of Health, Educ. and Welfare, 525 F.2d 158, 160 (1st Cir. 1975)). To sustain this burden, Plaintiff relies only on a non-acceptable medical source,[3] Ms. Pisaturo, whose treating record (a one-page letter describing therapy based on Plaintiff's subjective statements) does not indicate that she relied on any testing or other clinical or diagnostic techniques. Plaintiff argues that Ms. Pisaturo's PRT is the only one of record, but this is not accurate in that both the expert SSA psychologists completed PRT opinions. Further, as psychologists, they have the credentials to opine to the existence of the impairments reflected on the PRT, while Ms. Pisaturo does not. SSR 06-3p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Although Ms. Pisaturo's opinions are not entitled to controlling weight, 20 C.F.R. § 404.1527(c)(2), the ALJ carefully considered them and correctly found that they diverge dramatically from the balance of the medical record, which reflects "routine and conservative

---

[3] Only an "acceptable medical source" can opine on whether a claimant has a "medically determinable impairment." SSR 06-3p, 2006 WL 2329939, at *2 (Aug. 9, 2006); see 20 C.F.R. § 404.1513.

14

[mental health] treatment." Tr. 23. Two examples suffice to make the point. First Ms. Pisaturo opined that Plaintiff has had three "episodes of decompensation, each of extended duration." Tr. 464. This is simply wrong. There are no episodes of decompensation in the medical record, as both of the expert psychologists who examined the record concluded. Tr. 110, 125. Second, Ms. Pisaturo opined to cognitive functional impairments based on "organic mental disorders." Tr. 454. Yet, Dr. Sparadeo, who is a neuropsychologist and who relied on testing and other clinical methods, found Plaintiff's cognitive function to be normal. Tr. 352; see Tr. 356 (Dr. Updegrove notes that Dr. Sparadeo's testing resulted in conclusion that cognitive testing results normal). I find no error in the ALJ's reasons for rejecting these seriously flawed opinions.

### B. Sit/Stand Option

The Court, not Plaintiff, raised the question whether the ALJ erred in rejecting the opinion of the treating orthopedist (Dr. Updegrove), confirmed by the opinion of the examining orthopedist (Dr. Blazar), that Plaintiff's RFC should have included the limitation to jobs that permit him to sit/stand at will. The first issue for consideration is whether Plaintiff has waived this argument because he failed "to spell out the argument squarely and distinctly." Alston v. Apfel, 187 F.3d 621, 1999 WL 529516, at *1 (1st Cir. 1999) (unpublished table decision) (per curiam). Here Plaintiff was plainly aware of the argument – on cross examination at the first hearing, he asked the VE about the effect of a sit/stand-at-will option and the VE confirmed that work would be available if the job was "set up that way." Tr. 101. Otherwise, however, Plaintiff did not spell out the argument at all – to the contrary, he simply mentioned the sit/stand option in passing[4] but did not incorporate it into any of the arguments he did develop; nor did he ask the

---

[4] The entirety of Plaintiff's mention of the sit/stand option in his brief is embedded in his argument that the ALJ erred in ignoring his subjective statements about his own limitations. It consists of the following: "[o]n cross examination, Plaintiff's counsel was able to get the VE to concede that if the Plaintiff had to lie down for an hour a day or had to sit and stand as tolerated, not in accordance with their job, then the Plaintiff would be unable to find

15

medical expert at the hearing any questions about it. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

It is clear that, in this instance, the "ossature" was created by the Court's request for supplemental briefing, not by Plaintiff. Yet, it is Plaintiff who knows best the issues that are at the core of his claim. He waived this argument, opting instead to raise other matters, such as his mental health impairments. Accordingly, I recommend that the Court ignore this issue, deeming it to be waived.

While my recommendation is that Plaintiff's waiver should end the matter, mindful that the District Court may disagree, I briefly consider the merits of the question.

The difficulty facing the Court is that the ALJ rejected an opinion of a treating source she had otherwise found entitled to significant weight based on a specific "good reason" – "it is not specifically defined." Tr. 23. It is difficult to conclude that this "good reason" is not error in the face of the reality that the first VE found the sit/stand option, as presented in "the facts in the case record," SSR 96-9p, 1996 WL 374185, at *7, to be sufficiently defined as to permit an opinion regarding the erosion of the job base. Tr. 99-100; see Huertas v. Astrue, 844 F. Supp. 2d 197, 204 (D. Mass. 2012) (sit/stand option that implies at-will frequency sufficiently specific for hypothetical to vocational expert); Kennison v. Soc. Sec. Admin. Comm'r, No. 1:10-cv-00113-JAW, 2011 WL 1130887, at *3 (D. Me. Mar. 25, 2011) (at-will sit/stand option meets specificity requirement of SSR 96-9p). The Court is mindful that the SSA non-examining experts noted the

---

substantial gainful employment." ECF No. 18-1 at 9. As to the sit/stand option, this statement is inaccurate – the VE actually testified that a sit/stand limitation would leave work available that Plaintiff could do. Apart from this sentence, Plaintiff does not mention the sit/stand option.

Updegrove opinion with approval, deployed their expertise to interpret it in terms of functional limitations in the Social Security context (as opposed to the worker's compensation context in which Dr. Updegrove was opining) and did not include a sit/stand option in their RFC opinions. Relatedly, Dr. Kaplan testified that Plaintiff was "fortunate" in that his injuries did not result in displacement and that soft tissue injuries should be resolved. The ALJ could have resolved the inconsistency among these opinions to find that the sit/stand option opined to by an otherwise reliable treating source was not a necessary element of an RFC formulated under the Act. Taylor, 2016 WL 6778214, at *5 ("[T]he resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [the Commissioner], not for the doctors or the courts."). However, she did not. Instead, her only "good reason" was the sit/stand option's lack of specific definition. Tr. 23.

To shore up the ALJ's analysis, the Commissioner points to the ALJ's reliance on the medical expert, Dr. Kaplan. That does not solve the problem: the ALJ did not reject Dr. Updegrove because of an inconsistency with Dr. Kaplan. Indeed, both appear to agree that Plaintiff is capable of work. Nevertheless, as the Appeals Council found, Dr. Kaplan did not testify regarding Plaintiff's RFC.

At bottom, however, if the ALJ erred, I find that Plaintiff has failed to sustain his burden of establishing that the error inflicted prejudice. Shinseki v. Sanders, 556 U.S. 396, 409 (2009); see Sasen v. Spencer, 879 F.3d 354, 366 (1st Cir. 2018) ("The party challenging the agency's determination [here Plaintiff] bears the burden of showing that a particular error was prejudicial."). The first VE testified that the unskilled sedentary jobs identified (including hand packager and assembler) would be subject to an erosion percentage of 60% if a sit/stand option

was added.[5] Tr. 99-100. This percentage can be applied to the second VE's aggregate identified jobs (between 78,000 to 88,000 nationwide), which also included hand packager and assembler,[6] yielding between 31,200 to 35,000 jobs available. Tr. 67-68. It is well settled that this amounts to more than what is considered a "significant number in the national economy." See Dashnaw v. Astrue, Civil No. 10-cv-456-SM, 2011 WL 5040708, at *6 (D.N.H. Oct. 24, 2011) ("The vocational expert testified that more than 30,000 positions exist in the national economy for the three sedentary jobs identified by the ALJ. That is a 'significant number' of jobs in the national economy.") (citing Vining v. Sec'y of Health & Human Servs., 720 F. Supp. 2d 126, 137 (D. Me. 2010) (collecting cases and concluding that "numbers of jobs in the ballpark of 10,000 to 11,000 nationwide have been held 'significant'")). Remand is not necessary if correction of the error would be no more than an empty exercise. See Hatt v. Soc. Sec. Admin. Comm'r, No. 1:13-cv-335-NT, 2014 WL 4411600, at *6 (D. Me. Sept. 5, 2014) (citing Ward v. Comm'r of Soc. Sec., 211 F.3d 652 (1st Cir. 2000); Day v. Astrue, No. 1:12-cv-141-DBH, 2012 WL 6913439, at *10 (D. Me. Dec. 30, 2012)). With a claimant who was found capable of work by every opining expert (except the therapist who lacked the expertise and clinical foundation for her opinion), I find that any error is harmless and that Plaintiff has not sustained his burden of demonstrating that the ALJ's rejection of the sit/stand option caused him prejudice.

---

[5] This percentage is consistent with the erosion percentage for unskilled sedentary work found in sit-stand option cases in this Circuit. See Lobov v. Colvin, Civil No. 12-40168-TSH, 2014 WL 3386567, at *5 (D. Mass. June 23, 2014) (VE found sedentary positions reduced by 50% to accommodate sit/stand option); Clark v. Astrue, No. 2:11-cv-373-DBH, 2012 WL 2913700, at *4 (D. Me. June 28, 2012) (VE found at least 50% of unskilled sedentary work remains after erosion due to need for sit/stand option).

[6] The DOT numbers used as examples or illustrations by the second VE differ from those mentioned by the first VE. However, there is no suggestion that the broad categories (hand packager and assembler) are not sufficiently analogous to apply the percentage opined to by the first VE to the jobs identified by the second VE. See Lobov, 2014 WL 3386567, at *5; Clark, 2012 WL 2913700, at *4. Importantly, Plaintiff, who bears the burden on this issue, has not pointed to any reason why the first VE's erosion percentage could not apply to the second VE's opinion regarding available work.

With this merits analysis in mind, the last question for the Court is whether this is a moment where the Court's "review of the record suggests that justice requires" that the issue be raised *sua sponte* despite Plaintiff's waiver. Silva v. Colvin, No. CA 14-301 S, 2015 WL 5023096, at *13 (D.R.I. Aug. 24, 2015). In light of my finding that any error is harmless, I also find that this is not such a circumstance. That is, I do not find that justice requires that the Court ignore Plaintiff's waiver and raise the issue *sua sponte*.

In conclusion, I recommend that the Court find that Plaintiff has waived any argument he might have had based on the omission of the sit/stand option. Alternatively, I recommend that the Court find harmless the potential error committed by the ALJ in rejecting the sit/stand option for a reason that does not stand up to scrutiny. Either way, I recommend that the ALJ's holding that Plaintiff was not disabled be affirmed.

## VI. Conclusion

Based on the foregoing analysis, I recommend that Plaintiff's Motion to Reverse the Defendant's Final Decision without a Remand for Rehearing or in the Alternative Reverse with a Remand for Rehearing (ECF No. 18) be DENIED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 20) be GRANTED.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
October 12, 2018